# EXHIBIT A

FINANCIAL INDUSTRY REGULATORY AUTHORITY
IN THE MATTER OF THE ARBITRATION BETWEEN

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY LLC<br><br>   *Claimant,*<br><br>v.<br><br>CARRIE WEST,<br><br>   *Respondent.* | §<br>§<br>§<br>§<br>§  FINRA No. _____<br>§<br>§<br>§<br>§<br>§ |

## STATEMENT OF CLAIM

Morgan Stanley Smith Barney LLC (hereafter, "Morgan Stanley" or "Claimant), through its undersigned counsel, files this Statement of Claim in the above-styled arbitration against its former employee, Carrie West ("West"), CRD Number 5562986, before the Financial Industry Regulatory Authority ("FINRA") and states as follows:

### I. INTRODUCTION

1. Morgan Stanley files this arbitration in order to recover an award for an unpaid promissory note against West for a total principal amount of $298,400.00, plus interest on the principal amount, along with pre-award interest, post-award interest at the legal rate, and the costs and expenses of this arbitration, including reasonable and necessary attorneys' fees.

2. West was employed as a Financial Advisor by Morgan Stanley from on or about July 1, 2016, until October 11, 2019. During her employment at Morgan Stanley, West was an associated person of a member of FINRA.

1

3. West executed a promissory note during her employment in the amount of $447,600.00 (the "Note").[1] As a condition of Morgan Stanley's issuing the Note, West was obligated to repay the outstanding balance of the Note if her employment with Morgan Stanley ended for any reason or no reason at all. As of the date of this claim, West still owes a total of $298,400.00 in unpaid principal on the Note. Additionally, West owes accrued interest on the Note, which at the time of her departure from Morgan Stanley on October 11, 2019 totaled $5,911.07. Interest has continued to accrue on the debt at the rate set forth in the Note. By the time that this dispute goes to hearing, West will owe in excess of $304,311.07 to Morgan Stanley in unpaid principal and accrued interest.

4. West's employment with Morgan Stanley ceased on October 11, 2019. Upon the cessation of her employment, the outstanding balance of the Note loaned to her by Morgan Stanley became immediately due and payable.

5. On October 23, 2019, Morgan Stanley made demand for the Note to West. *See* West Demand Letter, attached hereto as **Exhibit 1**. Despite demand for payment, West has not repaid any portion of the principal or interest on the Note.

6. West is required to submit this matter to arbitration pursuant to the terms of the promissory note and various agreements that she executed during her employment, including the arbitration clause contained in the Note attached hereto as **Exhibit 2**, as well as the FINRA Rules.

---

[1] On October 22, 2019, Morgan Stanley Smith Barney FA Note Holdings LLC ("MSSB FA Note") and Morgan Stanley entered into an assignment agreement whereby MSSB FA Note sold and transferred all of its right, title and interest in and to the Note to Morgan Stanley. Morgan Stanley is filing this claim as the holder of Respondent's Note.

## II. JURISDICTION AND HEARING VENUE

7. Morgan Stanley has properly executed a Uniform Submission Agreement in this matter.

8. FINRA has jurisdiction to hear and decide this controversy, and West is bound to arbitrate this matter pursuant to the terms of various written agreements that she executed during her employment, including an arbitration clause contained in the Note which provides:

> Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
> See **Exhibit 2,** at p. 4.

9. Jurisdiction is also authorized by the rules of FINRA. *See* FINRA Rules 13100(a), (r), and 13200. Additionally, jurisdiction is expressly authorized by FINRA Rule 13806, which relates to promissory note proceedings. *See* FINRA Rule 13806.

10. Morgan Stanley respectfully requests that the hearing in this case be scheduled in Dallas, Texas, as it is the hearing location that is closest to where West was employed at the time the dispute arose. West is a resident of Bellevue, Texas and worked at all times relevant to this dispute in Wichita Falls, Texas.

11. West may be served at her residence, 639 Boot Tims Road, Bellevue, Texas 76228.

## III. FACTUAL BACKGROUND

12. Morgan Stanley is a nationwide full service brokerage firm that, among other things, maintains client brokerage accounts and assists clients with their investment objectives. West began working as a Financial Advisor for Morgan Stanley on or about July 1, 2016 and worked in the Morgan Stanley branch in Wichita Falls, Texas. Her responsibilities included, but were not limited to, servicing client accounts, advising clients on different investment instruments and strategies, and building client relationships.

13. On October 11, 2019, West's employment with Morgan Stanley ceased. Upon the termination of her employment, the outstanding balance of the Note loaned to her by Morgan Stanley became immediately due and payable.

### The Promissory Note

14. In connection with her employment at Morgan Stanley, West executed a promissory note and received a loan from Morgan Stanley pursuant to this promissory note in the amount of $447,600.00. *See* **Exhibit 2**. West was obligated to pay back $49,733.33 per year, plus accrued interest at the rate of 1.5% per annum on the balance remaining from time to time unpaid, annually for a period of nine years beginning on July 1, 2017 and ending on July 1, 2025.

15. Pursuant to the terms of the Note, the outstanding balance and accrued interest on the Note became immediately due and payable on October 11, 2019, the date of West's termination. Specifically, the Note provides:

> All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with the Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever…
> *See* **Exhibit 2,** at p. 2.

16. The Note also provides for an accelerated interest rate of 4% added to the pre-termination rate upon the occurrence of an "Acceleration Event," which includes the termination of West's Morgan Stanley employment. If West's employment with Morgan Stanley ended for any reason or for no reason, the entire outstanding principal balance amount plus interest owed on the Note became immediately due and would accrue additional interest at the default amount of 5.5% per annum on the balance remaining until paid in full. *See* **Exhibit 2,** at p. 1.

17. West's employment with Morgan Stanley ended on or about October 11, 2019.

18. Morgan Stanley sent a demand letter on October 23, 2019 to recover the balance of the Note. *See* **Exhibit 1**.

19. West has not made any further payments on either the principal or accrued interest owed on the Note. Additional interest continues to accrue on the outstanding principal balance.

## IV.    CLAIMS

### COUNT I - BREACH OF CONTRACT

20. Morgan Stanley incorporates by reference the preceding paragraphs as if fully stated herein.

21. Morgan Stanley has fulfilled in all material respects all of its obligations under the Note. West received the full principal loan amount totaling $447,600.00

22. West has breached her obligations under the Note by failing to repay the amount due under the Note after her employment was terminated on October 11, 2019.

23. The remaining total principal amount West owes on the Note is $298,400.00. This amount plus interest accrued now exceeds $304,311.07, and continues to grow in accordance with the applicable annual interest rates.

24. Morgan Stanley has suffered damages as a direct and proximate result of West's breach of the Note.

### COUNT II - ATTORNEYS' FEES AND COSTS

25. Morgan Stanley incorporates by reference the preceding paragraphs as if fully stated herein.

26. Under the Note, West agreed to pay to Morgan Stanley all expenses, including attorneys' fees, incurred by Morgan Stanley in connection with the collection of any outstanding indebtedness due under the Note or to enforce any provision of the Note. *See* **Exhibit 2**. Specifically, West agreed to the following:

> Borrower [West] hereby agrees to […] reimburse, the Note Holder [Morgan Stanley] and any Authorized Party and their respective affiliates, […] from and against any and all liabilities, losses, damages, costs, expenses (**including**

**attorneys' fees)** […] that may be suffered or incurred […] in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.
*See* **Exhibit 2** at p. 3 (emphasis added).

27. Accordingly, Morgan Stanley seeks its attorneys' fees and costs incurred in enforcing the terms of the Note.

## V. CONCLUSION AND REQUEST FOR RELIEF

28. As a result of West's failure to honor her obligations to Morgan Stanley, Morgan Stanley has been forced to retain counsel to seek collection of the Note, including but not limited to representing it in this arbitration action. Accordingly, Morgan Stanley has incurred attorneys' fees and other costs that it would not have incurred had West honored her obligations to Morgan Stanley. Pursuant to the terms of the Note, West agreed to pay all costs and expenses, including attorneys' fees, incurred or sustained by Morgan Stanley in connection with the enforcement of the Note.

WHEREFORE, Morgan Stanley respectfully requests that this Arbitration Panel:

A. For the Note, award Morgan Stanley the $304,311.07 principal amount and interest balance due and owing under the Note as of October 11, 2019, plus additional interest due through the date of the award at the rate of 5.5% ($44.96 per day) on the $298,400.00 unpaid principal due on the Note;

B. Award Morgan Stanley its fees and expenses, including all FINRA forum fees, the FINRA filing fee, and its reasonable attorneys' fees as provided for by the Note; and

C. Award Morgan Stanley all other just relief to which it may be entitled.

Dated: December 3, 2019

                                  Respectfully submitted,

                                  **HENNEMAN RAU LLP**

                                  By:   */s/ Laura L. Sammons*
                                        Laura L. Sammons
                                        lsammons@hennemanrau.com
                                        815 Walker Street, Suite 1440
                                        Telephone No: (713) 955-6030
                                        Facsimile No.: (713) 955-6141

                                  **ATTORNEYS FOR CLAIMANT MORGAN STANLEY SMITH BARNEY LLC**

# Morgan Stanley

Wendy R. Robinson, Esq.
Executive Director
Law and Compliance Division
101 California Street 2nd Floor
San Francisco, CA 94111

Tel 415 693 7320
Fax 415 693 6250
wendy.robinson@ms.com

October 23, 2019

Via UPS overnight delivery

Carrie West
639 Boot Tims Road
Bellevue, TX 76228

**Re:** **Promissory Note Obligation to Morgan Stanley Smith Barney**
**Outstanding Balance: $304,311.07**

Dear Ms. West:

During the course of your employment with Morgan Stanley Smith Barney LLC ("MSSB"), you executed a promissory note (the "Note") for which you currently have a remaining outstanding obligation of **$304,311.07**. Under the terms of the Note, the outstanding principal balance of $298,400.00, and accrued interest of $5,911.07, became immediately due and payable on the date your employment with Morgan Stanley Smith Barney LLC terminated. Interest at the rate set forth in the Note has been accruing each day since your last date of employment.

Pursuant to the terms of the Note, MSSB may be awarded all its expenses, including attorneys' fees, in connection with collection of this obligation. Enclosed is a spreadsheet reflecting payments made and the amount due on the Note as of your last date of employment.

At this time, Morgan Stanley will accept the amount due on your last day of employment to resolve this debt fully. If you wish to resolve this matter without resort to legal process, within ten (10) days of the date of this letter you must pay the balance owed by forwarding a check in the amount of **$304,311.07** made payable to **Morgan Stanley Smith Barney LLC**. Please mail the check to Morgan Stanley Smith Barney LLC, c/o Greenberg Traurig, Attn: Silvia Almaraz, 77 West Wacker Drive, Suite 3100, Chicago IL, 60601. Do not hesitate to contact me if you have any questions.

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Very truly yours,

*[signature]*

Wendy R. Robinson
Attorney at Law

**EXHIBIT 1**

TERMINATION DATE  10/11/2019
CALCULATION DATE  10/11/2019

|   | DATE | INITIAL PRINCIPAL | TERM | ANNUAL INSTALLMENT | YRS. PAID | LAST PAYMENT | PAID PRINCIPAL | UNPAID PRINCIPAL | UNPAID INSTALLMENT | PRINCIPAL DUE |
|---|---|---|---|---|---|---|---|---|---|---|
| A | 01-Jul-16 | $ 447,600.00 | 9 | $ 49,733.33 | 3 | 01-Jul-19 | $ (144,539.76) | $ 298,400.00 | $ 4,660.24 | $ 298,400.00 |
| TOTAL | | $ 447,600.00 | | | | | | $ 298,400.00 | $ 4,660.24 | $ 298,400.00 |

|   | INTEREST RATE | DAILY INTEREST | INTEREST ACCRUED | TOTAL PRINC. & INT. |
|---|---|---|---|---|
| A | 1.50% | $ 12.26 | $ 5,911.07 | $ 304,311.07 |
| TOTAL | | $ 12.26 | $ 5,911.07 | $ 304,311.07 |

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC         PROMISSORY NOTE

$447,600.00            <u>Wichita Falls, TX</u>            July 1, 2016
(AMOUNT)              (CITY AND STATE)                   (DATE)

Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch address) <u>3728 Maplewood Ave.</u>, or any subsequent holder of this Promissory Note (the "Note Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

In connection with the aforementioned, the Borrower promises to pay to the Note Holder the principal sum of four hundred forty seven thousand six hundred dollars and zero cents ($447,600.00) with interest on any unpaid balance thereof at the rate of 1.50% per annum ("Interest Rate") (which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows on the following "Payment Dates":

$49,733.33 on July 1, 2017
$49,733.33 on July 1, 2018
$49,733.33 on July 1, 2019
$49,733.33 on July 1, 2020
$49,733.33 on July 1, 2021
$49,733.33 on July 1, 2022
$49,733.33 on July 1, 2023
$49,733.33 on July 1, 2024
$49,733.33 on July 1, 2025

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by such deduction and/or check within ten (10) business days

EXHIBIT 2

following the applicable Payment Date, Borrower expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid

interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's employment can be terminated at any time for any reason or no reason.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note, and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their

respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER -
_____     7/1/16   4/20/17
Signature - Carrie West          Date

MORGAN STANLEY SMITH BARNEY LLC                              BONUS AGREEMENT

This Agreement is made on July 1, 2016, by and between Morgan Stanley Smith Barney LLC, a Delaware limited liability company ("Morgan Stanley"), and Carrie West ("Employee").

WHEREAS, Morgan Stanley and Employee believe it mutually advantageous to provide for the payment of bonuses to Employee in consideration of Employee's continued services on behalf of Morgan Stanley; and

WHEREAS, Employee has made certain representations to Morgan Stanley concerning Employee's employment at his/her previous employer in reliance upon which Morgan Stanley has entered into this Bonus Agreement, including, but not limited to, that he/she is not the subject of any compliance related investigations, whether formal or informal, for conduct which would constitute a violation of any rules for which a person could be disciplined by any self-regulatory organization, any provision of the Securities and Exchange Act of 1934, or any state statute prohibiting fraudulent or unethical conduct in connection with the offer, sale or purchase of a security or in connection with the rendering of investment advice,

NOW THEREFORE, the parties hereto agree as follows:

1. Subject to the other provisions of this Agreement, if Employee remains continuously employed, in good standing, with Morgan Stanley, Morgan Stanley shall pay to Employee the following bonuses on or about the Firm's normal bi-monthly pay cycle immediately following each of the following dates:

    $56,447.33 on July 15, 2017
    $55,701.33 on July 15, 2018
    $54,955.33 on July 15, 2019
    $54,209.33 on July 15, 2020
    $53,463.33 on July 15, 2021
    $52,717.33 on July 15, 2022
    $51,971.33 on July 15, 2023
    $51,225.33 on July 15, 2024
    $50,479.33 on July 15, 2025

All payments hereunder shall be subject to withholding of applicable Federal, state and local income taxes, as well as FICA, and all other employment taxes required by law to be withheld. Employee shall be solely responsible for all income and employee-side employment taxes that result from Employee's receipt of the bonus payments. The bonus payments shall not be eligible for computation of benefits or compensation under any Morgan Stanley, or any other related entity or affiliate compensation or benefits plans, including any wealth or capital accumulation plan.

2. No unpaid bonus payment shall become due and payable hereunder unless (a) Employee is continuously in the employ of Morgan Stanley, in good standing, from the date hereof to and including

the date such bonus payment is due and payable according to the schedule contained in Paragraph 1 above; and (b) Employee has obtained and retained all licenses and registrations from the Financial Industry Regulatory Authority, exchanges, state securities commissions and other regulatory bodies as Morgan Stanley shall determine necessary in order to conduct securities or futures transactions. As used herein, the term "good standing" shall mean, among other things, that Employee is current on the payment of all outstanding financial obligations to the Firm. In the event Employee has not obtained or retained all such licenses and registrations or is not in good standing at the time the bonus is payable, such amounts scheduled to be paid will be forfeited. In the event Employee's employment terminates voluntarily or involuntarily for any reason or no reason other than on account of death after becoming employed by Morgan Stanley, Employee shall not be entitled to receive any future bonus payments under this Agreement. If Employee's employment with Morgan Stanley terminates on account of death all bonuses shall be accelerated and become due and payable on an appropriately discounted basis as of the date of such Employee's death which amount shall first be applied to repay any outstanding indebtedness owed by Employee to Morgan Stanley, or any other related entity or affiliate, and the remainder of which, if any, shall be paid to Employee (or Employee's estate, in the event of death). Such lump sum shall be paid within sixty (60) days following the date of Employee's termination of employment with Morgan Stanley on account of death. Notwithstanding the foregoing, in the event Employee's employment with Morgan Stanley terminates on account of death, if Employee dies by suicide, no bonuses shall be accelerated and Employee shall not be entitled to receive any future bonus payments under this Agreement.

3. As a material condition of entering into this Bonus Agreement, Morgan Stanley has relied upon the accuracy of certain representations made by Employee concerning Employee's employment at his/her previous employer. In the event that any material representation turns out to be false in any respect, Morgan Stanley shall have the unilateral right to rescind this agreement and demand immediate repayment of all bonuses previously paid to Employee pursuant to this agreement.

4. This Agreement and any bonus payment payable hereunder shall not be subject to option or assignable either by voluntary or involuntary assignment or by operation of law including (without limitation) bankruptcy, garnishment, attachment or other creditors' process; provided, however, that the provisions of this Paragraph 4 shall not apply to any successor, parent, affiliate or subsidiary of Morgan Stanley. Upon the purported grant by Employee of an option over, or purported assignment by Employee of, any bonus payment in contravention of the preceding sentence, the obligation of Morgan Stanley to pay such bonus payment shall be extinguished, and neither Employee nor any other party shall have any further right thereto.

5. This Agreement contains the entire agreement between the parties relating to bonus payments to be paid to Employee hereunder, and supercedes any prior oral or written agreement relating to such payments. This Agreement cannot be altered or amended except by a written agreement executed by Morgan Stanley and Employee; provided that, Morgan Stanley may amend this Agreement without written consent of Employee to the extent necessary to comply with Section 409A. Notwithstanding the foregoing, Morgan Stanley retains the right to make modifications to this Agreement that it deems advisable, in its sole discretion, to allow it, its parents, and/or affiliates, or any successor thereto, to comply with or satisfy any legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy or other program.

6. This Agreement is not a contract of employment for any period of time. As a result, Employee's employment with Morgan Stanley is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Employee's employment can be terminated at any time for any reason or no reason.

7. Any controversy or claim arising out of or in any way relating to this Agreement or any benefits or payments available and/or due under this Agreement shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes. Any judgment or award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

8. All bonus payments payable under this Agreement are intended to be exempt from section 409A of the Internal Revenue Code of 1986, as amended (the "Code") in reliance on the short-term deferral exemption set forth in the final regulations issued thereunder. Notwithstanding the foregoing, if it is subsequently determined that the bonus payments payable under this Agreement are not so exempt, then this Agreement shall be administered and interpreted in a manner intended to cause the bonus payments to comply with section 409A of the Code, such that the accelerated taxation and tax penalty provisions of section 409A of the Code do not apply to the bonus payments. In addition, if the bonus payments constitute deferred compensation subject to the requirements of section 409A of the Code and such amounts are payable to Employee upon "separation from service" (within the meaning of section 409A(a)(2)(a)(i) of the Code and its corresponding regulations) from Morgan Stanley, then if Employee is a "specified employee" (as such term is defined in section 409A(2)(B)(i) of the Code and its corresponding regulations) as determined by Morgan Stanley (or any successor thereto), in its sole discretion, then all payments to Employee on separation from service pursuant to this Agreement shall be postponed for a period of six (6) months following Employee's separation from service from Morgan Stanley. The postponed amounts shall be distributed to Employee within thirty (30) days after the date that is six (6) months following Employee's separation from service from Morgan Stanley. No delay is required if Employee's separation from service is on account of death. In no event may Employee designate the calendar year in which the bonus payments will be paid. While the bonus payments payable under this Agreement are intended to be exempt from section 409A of the Code, neither Morgan Stanley nor any of its affiliates makes or has made any representation, warranty or guarantee of any federal, state or local tax consequences of Employee's receipt of the bonus payments hereunder, including, but not limited to, under section 409A of the Code.

9. This Agreement is confidential. As a further term of this Agreement, and to the extent permitted by law, Employee agrees that Employee will not disclose the existence of this Agreement or terms of this Agreement to any persons or parties; provided, however that this prohibition shall not apply to disclosures (i) to Employee's immediate family; (ii) to Employee's attorneys and/or tax advisors; (iii) to requests initiated by any state or federal regulatory agency or securities industry self-regulatory organization; (iv) in response to a validly issued subpoena or court order; or (v) as otherwise permitted or required by law in connection with any court action, arbitration or other legal proceeding to enforce the provisions of this Agreement. Any individuals to whom Employee makes any disclosure in accordance with items (i) and/or (ii) of this paragraph shall be advised by Employee of this confidentiality provision prior to any such disclosure, and shall agree thereafter to be bound by this confidentiality provision. Unless otherwise prohibited by applicable law, regulation or court order,

prior to making any disclosure in accordance with items (iii), (iv) and/or (v) of this paragraph, Employee shall provide his/her Regional Director with notice of the request, subpoena or court order, so that Morgan Stanley may have the opportunity to answer, object or otherwise respond to it.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in the City of _____Wichita Falls_____, in the State of ____Texas____ on the date first hereinabove written.

EMPLOYEE

_____    1/1/16  4/25/17
Signature - Carrie West                              Date

MORGAN STANLEY SMITH BARNEY LLC  4-25-17

_____    7-1-16
Branch Manager                                       Date

_____Richmond_____                  4-28-17
Regional Director                                    Date
Jill A. Richmond
Executive Director
Regional Risk Officer
Central Region